IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GREGORY NICHOLS<br>933 North Front Street, Unit 6<br>Philadelphia, PA 19123<br><br>Plaintiff,<br><br>v.<br><br>DOUGLAS DYNAMICS, INC.<br>7777 N. 73rd Street<br>Milwaukee, WI 53223<br><br>Defendant. | CIVIL ACTION NO. _____<br><br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT – CIVIL ACTION

Plaintiff, Gregory Nichols ("Plaintiff"), by and through his undersigned counsel, for his Complaint against Douglas Dynamics, Inc. ("Defendant"), alleges as follows:

## INTRODUCTION

1. Plaintiff brings this action to redress violations by Defendant of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*[1] Plaintiff alleges that Defendant violated the ADA by discriminating against and ultimately terminating him because of his disability, his past record of impairment, and/or because Defendant regarded him as disabled within the meaning of the ADA, and by failing to provide Plaintiff with a reasonable accommodation in connection with his disabilities. Plaintiff further alleges that Defendant unlawfully retaliated against Plaintiff for

---

[1] Plaintiff intends to amend his Complaint against Defendant to include a count under the Pennsylvania Human Relations Act upon the expiration of the applicable one (1) year administrative exhaustion period.

requesting a reasonable accommodation for his disabilities and for filing an internal report of discrimination in connection therewith.

## PARTIES

2. Plaintiff, Gregory Nichols, is an adult American citizen who currently maintains a residence at 933 North Front Street, Unit 6, Philadelphia, PA 19123.

3. Defendant Douglas Dynamics, Inc. is a professional corporation operating and existing under the laws of the State of Wisconsin, where it maintains a corporate headquarters at 7777 N. 73rd Street, Milwaukee, WI, 53223. Upon information and belief, Defendant operates in multiple states, including the Commonwealth of Pennsylvania, where it conducts sales and manufacturing, and maintains a manufacturing facility in Chalfont, PA.

4. At all times relevant hereto, Defendant acted or failed to act through its agents, servants, and/or employees thereto existing, each of whom acted at all times relevant hereto in the course and scope of their employment with and for Defendant.

## JURISDICTION AND VENUE

5. Paragraphs 1 through 4 are hereby incorporated by reference as though the same were fully set forth at length herein.

6. This action is authorized and instituted pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*

7. On or about September 11, 2017, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission, thereby satisfying the requirements of 42 U.S.C. §§ 2000e5(b) and (e). Plaintiff's EEOC Charge was docketed as EEOC Charge Number 530-2017-03874. Plaintiff's EEOC Charge was filed within one hundred and eighty (180) days of the unlawful employment practice.

8. By correspondence dated March 23, 2018, Plaintiff received a Notice of Right to Sue from the EEOC regarding his Charge, advising him that he had ninety (90) days to file suit against the Defendant.

9. On or around June 18, 2018, within the relevant statutory timeline, Plaintiff filed the instant matter.

10. Plaintiff has therefore exhausted his administrative remedies and has complied with all conditions precedent to maintaining this action.

11. This Court has original jurisdiction over Plaintiff's ADA claim, pursuant to 28 U.S.C. §§ 1331 and 1343, as it is a civil rights action arising under the laws of the United States.

12. This Court had pendant jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367, as those claims arise from the same nucleus of operative fact as his federal claims.

13. The venue in this district is proper pursuant to 28 U.S.C. § 1391, inasmuch as Defendant resides in this district and conducts business herein, and the events giving rise to this action occurred in this district.

**FACTUAL BACKGROUND**

14. Paragraphs 1 through 13 are hereby incorporated by reference as though the same were fully set forth at length herein.

15. Plaintiff began working for Defendant on or about April 23, 2016, as a Regional Sales Manager.

16. Plaintiff's job duties in this position included performing outside sales of Defendant's products throughout the Eastern United States and Canada.

17. During Plaintiff's employment with Defendant, he performed his job well, receiving occasional praise for his work and no significant discipline.

18. Indeed, Defendant was sufficiently pleased with Plaintiff's work performance that it used the same recruiting company that recruited him to work for Defendant.

19. Defendant is in the business of manufacturing and selling commercial vehicle attachments and equipment throughout North America. At all times relevant hereto, Plaintiff performed the majority of his work for Defendant out of his home in Philadelphia, Pennsylvania.

20. At the time of his hiring, Plaintiff had diagnoses of Post-Traumatic Stress Disorder ("PTSD"), Insomnia, and Traumatic Brain Injury ("TBI").

21. Plaintiff's PTSD is a mental impairment which, when active, substantially limits Plaintiff in one or more major life activity, including, but not limited to, thinking, concentrating, communicating, sleeping, and interacting with others.

22. Plaintiff's Insomnia is a physical/mental impairment which, when active, substantially limits Plaintiff in one or more major life activity, including, but not limited to, sleeping and concentrating.

23. Plaintiff's TBI is a physical/mental impairment which, when active, substantially limits Plaintiff in one or more major life activity, including, but not limited to, sleeping, concentrating, and interacting with others.

24. Plaintiff's PTSD, Insomnia, and TBI each constitute disabilities within the meaning of the ADA.

25. Plaintiff disclosed his disabilities to his supervisor, Steve Dewey ("Mr. Dewey"), Defendant's National Sales Manager in or around June of 2016.

26. Very soon after Plaintiff's disclosure, Mr. Dewey began making inappropriate and discriminatory comments about Plaintiff's disabilities.

27. For example, Mr. Dewey would ask, "What's your sleep like?" and make statements such as "You should be taking medication." Further, Mr. Dewey told Plaintiff that he spoke to his brother-in-law about Plaintiff's condition and made further suggestions about how he should "treat" his PTSD, Insomnia, and/or TBI.

28. During Plaintiff's employment, Mr. Dewey verbally coached him on a few occasions regarding tardiness. Each time, Plaintiff explained that his lateness was due to his disabilities, which can cause inadvertent over-sleeping.

29. Mr. Dewey never accommodated Plaintiff's disabilities and continued to comment on his occasional lateness in a negative manner.

30. In or around February of 2017, another employee made a complaint to Defendant's Human Resources ("HR") Department, unrelated to the present matter. That employee had filed a complaint against Mr. Dewey and as a part of Defendant's investigation, Plaintiff was contacted for a statement.

31. During Plaintiff's conversation with Terri Cox ("Ms. Cox"), Director of HR, he explained all the issues he had previously had with Mr. Dewey regarding his disabilities, his inappropriate and discriminatory comments about same, and his refusal to accommodate Plaintiff's very occasional tardiness.

32. Plaintiff stated to Ms. Cox that he felt that Mr. Dewey was retaliating against him because of his disabilities. However, Plaintiff was reassured, at that time, that his job was secure and that Defendant was going to investigate the issues he raised.

33. Approximately three (3) to four (4) weeks later, Plaintiff had not heard from HR regarding the result of their investigations. However, he continued to perform his job satisfactorily, despite Mr. Dewey's continued inappropriate and discriminatory behavior.

34. For example, Mr. Dewey had assigned a markedly heavier case load to Plaintiff when compared with his co-workers.

35. Upon information and belief, none of Plaintiff's co-workers had disclosed a disability or requested reasonable accommodations in connection thereto.

36. On or about March 15, 2017, Plaintiff approached Mr. Dewey at a work convention about his feelings regarding the work environment. Plaintiff expressed to Mr. Dewey that he was feeling "burned out" based on the events from the previous months and his markedly heavier workload. Mr. Dewey simply stated he thought Plaintiff was "making excuses."

37. Later in the day, Plaintiff was pulled aside for a meeting with Mr. Dewey, John Murphy (Mr. Murphy"), Head of Worldwide Sales, and an unknown woman from HR. Plaintiff was told that based on the HR investigation that had transpired over the previous month and "the conversation that transpired earlier," he was being terminated.

38. Defendant never engaged in any process to address possible ways in which Plaintiff's disabilities could be accommodated.

39. It is believed and therefore averred that Defendant discriminated against and ultimately terminated Plaintiff because of his actual and/or perceived disabilities, past record of impairment, requests for accommodation in connection with his disabilities, and in retaliation for requesting a reasonable accommodation and submitting an internal report of discrimination in violation of the ADA.

40. Plaintiff has, because of Defendant's wrongful termination of Plaintiff's employment, struggled to obtain other employment and has been and will be forced to expend significant amounts of money on health insurance premium payments.

41. As a result of Defendant's deliberate, willful, malicious, and unlawful actions, Plaintiff has suffered damages, including, but not limited to, loss of employment, promotion benefits, earnings and earnings potential, loss of potential bonuses, and other economic damages, and has also suffered mental anguish, emotional pain and suffering, emotional distress, humiliation, and damage to reputation.

## COUNT I
## THE AMERICANS WITH DISABILITIES ACT
## 42 U.S.C § 12101, *ET SEQ.*
## DISCRIMINATION AND RETALIATION

42. Paragraphs 1 through 41 are hereby incorporated by reference as though the same were fully set forth at length herein.

43. At all times relevant hereto, Plaintiff was an employee within the meaning of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*

44. Pursuant to the ADA, Plaintiff is a qualified individual with one or more disabilities.

45. Plaintiff's PTSD, Insomnia, and TBI are physical and/or mental impairments which substantially limit Plaintiff in one or more major life activity, as described above.

46. Defendant was aware of Plaintiff's disabilities and/or regarded Plaintiff as being disabled.

47. Despite his disability, Plaintiff was able to perform the essential functions of his job with or without a reasonable accommodation.

48. By reasons of the foregoing, Defendant, through its agents, officers, servants, and/or employees, has violated the ADA by failing to engage in the interactive process of determining reasonable accommodations for Plaintiff, and by terminating Plaintiff's employment

because of his actual and/or perceived disability and request for reasonable accommodations in connection thereto.

49. As a result of Defendant's deliberate, unlawful, and malicious actions as set forth above, Plaintiff has suffered loss of employment, earnings, raises, other significant economic benefits, emotional pain and suffering, emotional distress and humiliation.

**WHEREFORE**, as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant, and grant him the maximum relief allowed by law, including, but not limited to:

A. Back wages, front pay, and bonuses in an amount to be determined at trial, but not less than one hundred and fifty thousand dollars ($150,000.00);

B. Punitive, compensatory, and/or exemplary damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, negligent, willful, wanton, and/or malicious conduct;

C. Plaintiff's costs, disbursements, and attorneys' fees incurred in prosecuting this action;

D. Pre-judgment interest in an appropriate amount;

E. Such other and further relief as is just and equitable under the circumstances; and

F. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages as set forth by applicable law.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.

Respectfully submitted,

**MURPHY LAW GROUP, LLC**

By: _____
Michael Murphy, Esq.
Michael Groh, Esq.
Murphy Law Group, LLC
Eight Penn Center, Suite 2000
1628 John F. Kennedy Blvd.
Philadelphia, PA 19103
TEL: 267-273-1054
FAX: 215-525-0210
murphy@phillyemploymentlawyer.com
mgroh@phillyemploymentlawyer.com
*Attorneys for Plaintiff*

Dated: June 18, 2018

## **DEMAND TO PRESERVE EVIDENCE**

The Defendant is hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to his potential claims and his claims to damages, to any defenses to same, including, but not limited to electronic data storage, employment files, files, memos, job descriptions, text messages, e-mails, spreadsheets, images, cache memory, payroll records, paystubs, time records, timesheets, and any other information and/or data which may be relevant to any claim or defense in this litigation.